UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLARK W.,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | CASE NO. 3:23-CV-5263-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of his application for disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's subjective symptom testimony. Had the ALJ properly addressed Plaintiff's testimony, he may have included additional limitations in Plaintiff's residual functional capacity ("RFC") or reached a different conclusion regarding disability. The ALJ's error is, therefore, not harmless,

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## I.  Factual and Procedural History

Plaintiff filed a claim for DIB on November 6, 2019, alleging disability due to Sjogren's syndrome[2] and fibromyalgia, among other alleged impairments. Dkt. 8, Administrative Record ("AR") 84–86. He initially alleged disability beginning July 1, 2019, but later amended the alleged onset date to December 19, 2019. AR 49, 86. His application was denied at the initial level and on reconsideration. AR 84, 94, 110–12, 116–23. He requested a hearing before an ALJ, which took place on June 10, 2021. AR 31–74, 124–25. Plaintiff was represented by counsel at the hearing. *See* AR 31.

The ALJ issued an unfavorable decision denying benefits on January 13, 2022. AR 16–30. In the decision, the ALJ found Plaintiff had the severe impairments of Sjogren's syndrome and fibromyalgia. AR 18. Despite these impairments, the ALJ determined Plaintiff had the RFC to perform light work with certain additional limitations. AR 21. He concluded Plaintiff could perform his past relevant work as a Quality Manager. AR 24.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–6, 194–96. Plaintiff appealed to this Court. Dkts. 1, 5.

---

[2] Sjogren's syndrome is an autoimmune disorder of which the primary symptoms are dry eyes and dry mouth, although some people develop additional symptoms such as joint pain, swelling, and stiffness. *See* Mayo Found. for Med. Educ. and Rsch., *Sjogren's syndrome*, Mayo Clinic (Aug. 2, 2022), https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216.

## II.     Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence "is a highly deferential standard of review[.]" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up).

"[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.*

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

### III.  Discussion

Plaintiff contends the ALJ erred in discounting his subjective symptom testimony and in failing to evaluate statements from Plaintiff's former employer. Dkt. 10 at 1. He argues the proper remedy for these errors is reversal for an immediate award of benefits. *Id.* at 12–13.

####    A.  *Subjective Symptom Testimony*

Plaintiff first argues the ALJ supplied insufficient reasons for rejecting Plaintiff's testimony about the severity of his symptoms. *Id.* at 3.

#####         1.  Subjective Symptom Testimony Standard

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). At the first step, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

If the claimant satisfies this first step and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this

standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-Hunter*, 806 F.3d at 489.

The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ to make "specific finding[s]:"

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, the specific, clear, and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

          2. Analysis

In an initial function report, Plaintiff reported difficulty with multiple physical movements including lifting, standing, reaching, walking, and sitting because of constant pain. AR 280. At the hearing on June 10, 2021, Plaintiff testified that his pain never fully subsides and stated that he is "basically . . . never comfortable." AR 50–51. He described needing to shift positions constantly to alleviate pain and discomfort. *Id.* The ALJ asked Plaintiff to rate his daily pain on a scale of zero to ten, and Plaintiff responded his usual level of pain was around a five, while the "extreme is ten and plus." *Id.* He also described severe fatigue, problems with concentration and memory, and stated that his "hands don't work." AR 50–53, 58–59.

Plaintiff testified that the medications prescribed by his rheumatologist helped him to manage his symptoms somewhat. AR 54. He stated, "Without the meds that I take, I'm kind of a zombie. . . . I mean, it's bad now, but if I don't take these medications, I find that I'm in more pain. I'm less [functional]." *Id.* Plaintiff agreed with the ALJ's summation that the medications kept his symptoms "from being off the charts bad," but did not alleviate them entirely. *Id.*

Plaintiff also stated that his activity level varied considerably depending on how he was feeling on any given day. AR 62. He described a recent day on which he got up and did not feel well, so he went back to bed and "slept the day away." *Id.* On good days, he could do light chores like washing dishes or sweeping the floor. AR 62–63. Plaintiff testified that tasks took a long time to complete because he had to take a lot of breaks during his daily activities and required quite a bit of recovery time. AR 61–62. For example, he said he was able to stand at the kitchen sink for about 20 to 30 minutes before having to sit down and rest for 40 minutes to an hour. AR 63. The only "heavy" chore he was able to do was mow the lawn. *Id.* Plaintiff testified he used to pride himself on his yard, but he was no longer able to take care of it to the same extent. AR 58. He described mowing his lawn as a task that used to take him two hours but now takes him four to six hours over one to two days, depending on how many breaks he needs to take. AR 58, 61.

The ALJ found "[t]he record establishes a diagnosis of Sjogren's syndrome with associated Fibromyalgia, chronic dry eye and mouth, intermittent parotid gland swelling, and positive serum studies including a strong positive ANA and SSA antibody." AR 22–23. He also noted "[t]he record adequately documents the claimant's complaints of fatigue, pain, and diminished functioning." AR 22. The ALJ found Plaintiff's severe medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. *Id.* However,

he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* The ALJ concluded that "the medical evidence of record establishes that the claimant has some functional limitations due to his physical impairments" but "he is capable of sustaining light exertional work activities consistent with the above residual functional capacity despite his physical impairments." AR 23–24. The ALJ gave three primary reasons for this conclusion: (1) Plaintiff's testimony was inconsistent with examination findings, (2) Plaintiff's conditions were effectively treated with medication, and (3) Plaintiff's activities in his daily life indicated that his symptoms were not as limiting as he alleged. *Id.*

### a. Examination Findings

The ALJ found "examination findings throughout the relevant period have been primarily unremarkable and inconsistent with the claimant's subjective complaints of pain and diminished functioning." AR 23.

When a claimant has established a medical impairment reasonably likely to be the cause of alleged pain, an ALJ may not reject the claimant's testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.3d 341, 346–47 (9th Cir. 1991). Fibromyalgia commonly causes "chronic pain throughout the body" with "an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (cleaned up). Defendant acknowledges that courts urge caution when using objective evidence to assess a claimant's limitations in a fibromyalgia case because it is common for objective findings to be unremarkable. Dkt. 17 at 3 (citing *Tamara B. v. Comm'r of Soc. Sec.*, No. 3:18-cv-05219-JCC-TLF, 2019 WL 2563850, at

*2–4 (W.D. Wash. Apr. 8, 2019), *report and recommendation adopted*, No. C18-5219-JCC, 2019 WL 1922806 (W.D. Wash. Apr. 30, 2019)).

The ALJ cited to four specific progress notes in support of his statement that Plaintiff's examination findings were largely unremarkable. AR 23. The first cited examination took place before Plaintiff's amended alleged onset date of December 19, 2019. *See* AR 23, 577. Citations from encounters prior to a claimant's alleged onset date are "of limited relevance." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Another record, which the ALJ cited for unremarkable physical examination findings, was from a virtual appointment with Plaintiff's rheumatologist. *See* AR 23, 759, 763. In addition, many of the records cited by the ALJ in support of his conclusion contain conflicting statements, some of which the ALJ acknowledged in his written decision. *See, e.g.*, AR 23 ("An October 2020 examination revealed no . . . tenderness[.] However, the claimant demonstrated mild to moderate tender points bilaterally in the occiput, low cervical, trapezius, supraspinatus, second rib, lateral epicondyle, gluteal, greater trochanter, and knees.") (internal citations omitted), 517–19 ("Negative for back pain, extremity pain, arthritis, myalgia, muscular weakness, trauma, joint pain or stiffness. . . . Assessment: . . . Multiple joint pain[.]"), 626 ("He has multiple aches and pain, severe myalgia. . . . He denies any . . . myalgia[.]"). Although the ALJ is responsible for resolving conflicts in the evidence, he must explain his reasoning to allow for this Court's review. *See Ford*, 950 F.3d at 1149; *Brown-Hunter*, 806 F.3d at 492. The ALJ did not do so here.

The ALJ found that Plaintiff suffered from fibromyalgia and acknowledged Plaintiff's continued complaints of fatigue, pain, and diminished functioning throughout the record. Accordingly, inconsistency with objective examination findings does not constitute a valid reason to reject Plaintiff's testimony about the severity of his pain. Further, the ALJ's citations to

the record do not provide substantial evidence to support the ALJ's conclusion, nor did he adequately explain his reasoning for resolving conflicts in the evidence. This is not a sufficiently specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

### b. Effective Treatment

The ALJ wrote that the medical evidence indicated Plaintiff's "condition was effectively treated with no objective inflammatory arthritis, indication of internal organ involvement, or side effects of medications." AR 23. He explained:

> [T]he medical evidence shows improvement and stability with treatment and medications. In March 2020, the claimant endorsed experiencing severe myalgias but reported he was taking NSAIDs[3] which were helping. In October 2020, the claimant's rheumatologist noted that his Sjogren's was stable with medication and his fibromyalgia appeared stable as well.

*Id.* (internal citations omitted).

In support of this conclusion, the ALJ cited to a March 2, 2020, follow-up visit with Plaintiff's primary care provider after he had recovered from influenza. AR 626. The provider documented Plaintiff's reports of "multiple aches and pains" as well as "severe myalgia," and noted Plaintiff "is taking NSAIDS and this seems to help. He has been followed by a rheumatologist for his aches and pain." *Id.*

The ALJ also cited to an October 20, 2020, virtual visit with Plaintiff's treating rheumatologist, Yong Zhu, M.D. AR 23, 759. Dr. Zhu wrote Plaintiff had been "treated with hydroxychloroquine 400 mg daily and methotrexate 12.5 mg once a week without side effects." AR 759. He also noted "chronic dry eye and dry mouth, but no objective inflammatory arthritis and no indication of internal organ involvement." *Id.* Elsewhere in the progress note from this encounter, Dr. Zhu wrote that Plaintiff's Sjogren's syndrome had been "quite[ ]stable" on his

---

[3] Non-steroidal anti-inflammatory drugs.

current medication regimen and recommended continuing this plan of care. AR 765. He also noted "[c]hronic polyarthralgia and polymyalgia without frequent fibromyalgia flare." AR 767.

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). But, although the medications appear to have lessened Plaintiff's pain, the ALJ's citations do not show that his symptoms were fully resolved or even adequately managed. The record shows that Plaintiff had been taking hydroxychloroquine and methotrexate in the same dosages since at least January 13, 2020, but he continued to report ongoing pain. *See, e.g.*, AR 579, 601, 626–27, 759, 792, 828. During the same appointment at which he said NSAIDs "seem[ed] to help" with myalgias, Plaintiff still complained of severe pain. AR 626.

Further, the ALJ does not explain why Dr. Zhu's note that Plaintiff's Sjogren's syndrome was "stable" on his current medication contradicts Plaintiff's subjective symptom testimony about the severity of his pain. Neither the ALJ nor Dr. Zhu clarify the meaning of "stable," so it is not clear if they are using the term in the same way. It is possible Dr. Zhu intended to note only that the disease was not worsening, but the ALJ seems to have concluded Dr. Zhu's note meant Plaintiff's symptoms from Sjogren's were largely controlled by his medications. As noted above, the record here does not support that interpretation—Plaintiff reported continued pain to his medical providers and testified at the hearing that he continued to experience symptoms.

This reason for discounting Plaintiff's testimony about the severity of his pain is not clear and convincing or supported by substantial evidence.

### c. Activities of Daily Living

Finally, the ALJ wrote that Plaintiff's activities in his daily life indicated his symptoms were not as limiting as he alleged:

> The record shows that the claimant demonstrates a level of physical and mental functioning in his personal life that is consistent with the above residual functional capacity. The claimant asserts he takes care of pets, prepares simple, easy meals, does light housework including mowing although it takes longer and with extra breaks, drives, and shops. The claimant also asserts he spends his time watching movies, playing video games, and reading. This evidence strongly indicates that the claimant's symptoms are not as limiting as alleged.

AR 23 (internal citations omitted).

An ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, the Ninth Circuit has emphasized that physical activities that do not consume a *substantial* part of a claimant's day do not necessarily contradict claims of pain:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Plaintiff acknowledges he can perform the activities cited by the ALJ, though he requires frequent breaks, but argues the ALJ has not explained how these activities are inconsistent with his symptom testimony. Dkt. 10 at 8–9; Dkt. 18 at 6. The Court agrees. It is true that "[a] claimant's completion of certain household tasks can provide a valid reason for discounting her inconsistent symptom allegations, even in the specific context of fibromyalgia pain." *Roberts v. Berryhill*, 734 F. App'x 489, 491 (9th Cir. 2018) (citing *Revels*, 874 F.3d at 667; *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). However, the ALJ's decision does not "cite[] activities that contradict Plaintiff's specific allegations[.]" *Maureen S. v. Comm'r of Soc. Sec.*, No. C18-1667-MLP, 2019 WL 2491915, at *3 (W.D. Wash. June 14, 2019); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). As the ALJ did not explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony," the ALJ erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings [of credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Additionally, the decision contains no analysis of Plaintiff's testimony regarding the significant difference in his capabilities on "good" or "bad" days. For instance, the ALJ did not address Plaintiff's statements that his level of functioning varied considerably from day to day based on the severity of his pain and fatigue. *See* AR 50–51, 62, 275, 292. Given the ALJ's failure to explain his reasoning, the finding that Plaintiff's activities contradicted his testimony is not sufficiently specific, clear, and convincing.

For the reasons described above, the ALJ failed to provide any clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective pain testimony. Thus, the ALJ erred. Had the ALJ properly considered Plaintiff's testimony, the RFC and hypothetical questions posed to the vocational expert may have contained additional limitations. For example, the RFC and hypothetical questions may have included limitations reflecting

1 Plaintiff's testimony that he was only able to stand at the kitchen sink for about 20 to 30 minutes
2 before having to sit down and rest for 40 minutes to an hour. *See* AR 63.
3       Because the ultimate disability determination may have changed with proper
4 consideration of Plaintiff's testimony, the ALJ's error is not harmless and requires reversal. *See*
5 *Molina*, 674 F.3d at 1115.
6       B.  *Lay Witness Testimony*
7       Plaintiff also contends the ALJ erred by failing to acknowledge the statements from
8 Plaintiff's former employer indicating that Plaintiff was not capable of performing his past
9 relevant work. Dkt. 10 at 9–10. Defendant responds that "ALJs need not always provide written
10 analysis of evidence from nonmedical sources" under the currently applicable regulations. Dkt.
11 17 at 7.
12       The regulations regarding the evaluation of certain medical and nonmedical evidence
13 have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules
14 Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18,
15 2017). Under the revised regulations, ALJs are "not required to articulate" how they evaluate
16 evidence from nonmedical sources using the same factors applicable to medical opinion
17 evidence. 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit has not yet clarified
18 whether an ALJ is still required to provide "germane reasons" for discounting lay witness
19 testimony. *See Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20,
20 2023). Other relevant regulations indicate that ALJs will consider evidence from nonmedical
21 sources when evaluating a claim of disability. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1),
22 404.1545(a)(3), 416.929(c)(1), 416.945(a)(3). And an ALJ may not reject "significant probative

evidence" without explanation. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The Court has directed the ALJ to reassess Plaintiff's testimony on remand. As Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of the medical evidence may impact the assessment of the lay witness opinion, the ALJ shall also reconsider the testimony from Plaintiff's former employer on remand.

C.  *Remedy*

Plaintiff requests the Court credit his testimony as true and remand this case for a finding of disability as of the amended alleged onset date of December 15, 2019. Dkt. 10 at 4.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined the ALJ must re-evaluate Plaintiff's subjective symptom testimony and the lay witness evidence. Further, based on the errors identified above, issues

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 14

remain that must be resolved concerning Plaintiff's functional capabilities and his ability to perform his previous work or other jobs existing in significant numbers in the national economy. Therefore, remand for further administrative proceedings is appropriate.

IV. **Conclusion**

Based on the foregoing reasons, the Court hereby finds that the ALJ improperly concluded Plaintiff was not disabled beginning December 15, 2019. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 22nd day of February, 2024.

*[signature]*

David W. Christel
United States Magistrate Judge